"ANITA BUENOS", Petitioner, *v.* "CARLOS BUENOS", Respondent.*

Domestic Relations Court of the City of New York, Family Court, Bronx County, March 17, 1947.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act (L. 1933, ch. 482).

John J. Bennett, Corporation Counsel (Rose Schneph of counsel), for petitioner.

Pedro Gotay for respondent.

SICHER, J.   An order for $20 per week for support of petitioner wife and two children was entered by Justice SIEGEL on May 3, 1946, sixteen days after their arrival in New York City from Puerto Rico, where the parties had married and separated.

.Respondent had arranged for his wife and children to come from Puerto Rico to New York City, allegedly on the understanding that petitioner would work here and both parents contribute support.   But the family did not become reunited in New York City, each spouse charging infidelity.

After interim violation hearings that order was on August 22, 1946, modified by Justice PANKEN to $30 semimonthly and the then arrears fixed at $130.

In September, 1946, petitioner returned with the children to Puerto Rico, and on November 25, 1946, wrote to this court that she intended to remain there permanently.

On November 7, 1946, respondent attended with an attorney and moved to vacate the order on the ground of such permanent removal.

He asserted also that he had made direct payments to petitioner until informed that she was misconducting herself and neglecting the children.

Decision was reserved until disposition by the Appellate Division, First Department, of a then pending appeal from an order made, by another justice, in the New York County Family Court (Adams v. Adams infra).   For, such appeal squarely presented a question which might be determinative of the instant case and had been expressly left open in Wagner v. Wagner (257 App. Div. 307, 308), namely, whether " * * * the right to continue an order such as was made here " — support for wife and child — " would exist where the persons benefited reside permanently without the State."

Meanwhile, at the conclusion of said November 7, 1946, hearing, and again in a preliminary memorandum filed on December 23, 1946, respondent was directed to deposit the order sum of $30 semimonthly but the cashier was instructed to hold all

deposits until further order. Simultaneously this court's Probation Bureau was requested to seek from a local court in Puerto Rico, or other appropriate agency, report of the conditions under which petitioner and the children were living and the prospects for proper application of support moneys furnished by respondent.

Respondent deposited $30 on November 21, 1946, and another $30 on December 5, 1946, but no other sum whatever.

Reply communications from the United States District Court, San Juan, Puerto Rico, Probation Bureau, indicated that the wife and children had been living at Arecibo, Puerto Rico, in a state of virtual destitution and that the petitioner therefore contemplated returning to New York City.

On March 4, 1947, petitioner personally informed the supervising probation officer of this court that she had arrived again in New York City on March 1, 1947; that she had left the children in Puerto Rico with the maternal grandmother but planned to bring them to New York City as soon as feasible; that she could not find work in Puerto Rico but would seek employment in New York City; that if the court denied support for the children in Puerto Rico she would remain in New York City and send for them; but that if the $30 semimonthly order be continued and enforced she would rejoin them in Puerto Rico because that provision would suffice for adequate maintenance of herself and the children there.

On March 7, 1947, the Appellate Division filed a *Per Curiam* opinion in the aforementioned *Adams* v. *Adams* case and remitted it to the New York County Family Court for further proceedings in accordance therewith (*Adams* v. *Adams*, 272 App. Div. 29, *supra*).

That opinion mentioned no prior decision. However, its clear effect is to scrap the above-quoted *Wagner* v. *Wagner* (*supra*) dictum and to approve the principle evolved in "*Almandares*" v. "*Almandares*" (186 Misc. 667) and followed by Westchester County Children's Court Judge GEORGE W. SMYTH in *Matter of* "*Morgan*" v. "*Morgan*" (187 Misc. 714), namely, that if a respondent resides or is domiciled in New York City the Family Court *does* have jurisdiction to make or continue a support order for a nonresident beneficiary, but that the exercise of such jurisdiction is discretionary according to the particular facts. Thus, although the order entered in *Adams* v. *Adams* (*supra*) was reversed, the proceeding was not dismissed but remitted for further evidence as to whether

the support moneys would be properly applied to the children's use (cf. " *Almandares* " v. " *Almandares* ", *supra,* beginning last paragraph on p. 674 and continuing to the end).

Such Appellate Division decision now confirms, at least for the First Department, the jurisdiction of. the Family Court division of this court to make or continue against a respondent residing in New York City an order for support of a beneficiary permanently residing out of the State.

Seemingly, the same position has been taken by the Appellate Division, Second Department in view of its *Di Martino* v. *Di Martino* (269 App. Div. 781) unanimous affirmance of a Queens County Family Court order for a wife and child residing in Massachusetts (see " *Almandares* " v. " *Almandares* ", *supra,* p. 671) and its *People* v. *Tannone* (271 App. Div. 937) unanimous affirmance of an order of filiation against a Westchester County resident putative father of a child born in Connecticut and residing there with its mother.

For the foregoing reasons, respondent's application to vacate the August 22, 1946, order is hereby denied, as a matter of law and discretion, and the parties directed to attend, at a date to be fixed by the clerk of this court as soon as consistent with calendar conditions, for determination by the justice then sitting, of (1) the amount of arrears; (2) what, if any, portion thereof should be cancelled upon petitioner's consent or *ad invitem* (under N. Y. City Dom. Rel. Ct. Act, § 92, subd. [10]; L. 1933, ch. 482); (3) the manner of payment of any arrears so fixed; (4) the continuance of that order, or such modification or suspension thereof as may conform with current circumstances; and (5) such further, or different, provisions as may seem proper to the justice then sitting.

If respondent fails to attend at the date fixed, a warrant under subdivision 1 of section 132 of the Domestic Relations Court Act, seems indicated.

Opportunity to question petitioner under oath at such hearing may surmount or minimize any obstacle to adequate proof of the facts concerning the amount, if any, of direct payments, the needs of the children, and what, if any, conditions respecting their care should be attached to the direction for support contributions by respondent. Besides, Family Court Rule XXVIII, effective November 1, 1946 (Bender's Court Rules, 1947, p. 372), would permit taking depositions in Puerto Rico as to any controverted facts not concluded by the testimony of the parties; and Family Court Rule XVII, also effective November 1, 1946

(Bender's Court Rules, 1947, p. 370), provides for entertaining petitioner's cross application concerning violation concurrently with respondent's application for vacatur.

Finally, it seems appropriate to observe that the situation now presented forcibly illustrates the following argument in the *amicus curiæ* brief of Assistant Corporation Counsel Rose Schneph filed in the *Adams* v. *Adams* appeal (*supra*): " * * * it is to the interest of the City of New York that the power of the Domestic Relations Court to make orders of support on behalf of non-resident wives and children whose husbands and fathers reside here be upheld. Otherwise, in many instances, these women and children would be forced to move into the City. Often this would result in their becoming public charges because the usually small support orders based on small earnings made in the Domestic Relations Court would not be sufficient to support them here. In their own communities, where the cost of living is cheaper and where they may receive the aid of relatives, these support orders are frequently sufficient to maintain them." (Brief, p. 2.)

Notice shall be given pursuant to the subjoined direction.